Ms. Mariana Paula Noli, Esq., CA State Bar No. 247369
mail@noli-ipsolutions.com
Mrs. Erin Hiley, Esq., CA State Bar No. 236322
NOLI IP SOLUTIONS, P.C.
5030 Bella Collina St.,
Oceanside, California 92056
Telephone: (442) 224-7490
Facsimile: (858) 810-0137

Attorneys for Plaintiffs
MARTHA MARIA SANCHEZ QUIROZ
DON CLEMENTE, INC.
PASATIEMPOS GALLO, S.A. de C.V.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA MARIA SANCHEZ QUIROZ, a Mexican individual, DON CLEMENTE INC., a Texas Corporation, PASATIEMPOS GALLO S.A. de C.V., a Mexican Corporation<br><br>                              Plaintiffs,<br>    v.<br><br>MILLENNIAL LOTERIA LLC, a California Limited Liability Company, and MIKE ALFARO MIGOYA, an Individual<br>                        Defendants. | Case No. 2:19-cv-10709<br><br>**COMPLAINT FOR:**<br>**(1) Federal Trademark Infringement, 15 U.S.C. § 1114(1);**<br>**(2) Federal Unfair Competition, 15 U.S.C. §1125(a)(1)(a);**<br>**(3) Dilution, 15 U.S.C. § 1125(c);**<br>**(4) California Unfair Competition, Cal. Bus. & Prof. Code § 17200;**<br>**(5) Preliminary injunction** |

      MARTHA MARIA SANCHEZ QUIROZ, an individual residing in Mexico, DON CLEMENTE, INC., a Texas Corporation, and PASATIEMPOS GALLO, S.A de C.V., a Mexican Corporation (Plaintiffs), v. MILLENNIAL LOTERIA LLC, a California Limited Liability Company, and MIKE ALFARO MIGOYA, an individual residing in California (Defendants).  Complaint for Trademark Infringement, Unfair Competition, Trademark Dilution, and Related Claims – Injunctive Relief and Damages.  Plaintiffs, Martha Maria Sanchez Quiroz, Don Clemente Inc., and

Pasatiempos Gallo S.A.de C.V ("Plaintiffs") state the following for its Complaint against Defendants Millennial Loteria LLC ("ML") and Mike Alfaro Migoya ("MA")(collectively, "Defendants").

## INTRODUCTION

1. This is an action at law and in equity for trademark infringement, unfair competition, dilution, and injury to business reputation, arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051 et seq. ("Lanham Act"); the Anti-Dilution laws of California Business and Professional Code and the common law.

2. Defendants, Millennial Loteria LLC, and Mike Alfaro Migoya, are offering for sale and selling bingo cards and board games using identical reproduction of the Plaintiffs' federally-registered trademarks and trade dresses identified in **EXHIBIT A** (hereinafter referred to as the "LOTERIA Marks").    Plaintiffs do not manufacture Defendants' board games and bingo cards, nor are Defendants connected, licensed or affiliated with, or authorized by, Plaintiffs in any way.  Defendants' merchandise causes confusion and deceives consumers and the public regarding its source, and Defendants' merchandise dilutes and tarnishes the distinctive quality of the LOTERIA Marks. All the claims asserted therein arise out of the Defendants' actions that cause trademark infringement.

## ORIGINAL JURISDICTION AND VENUE OVER LANHAM ACT CLAIMS

3. This Court has subject matter jurisdiction under section 39 of the Lanham Act, 15 U.S.C. §1121, and under 28 U.S.C. §§1331 and 1338.  This Court has jurisdiction over Plaintiffs related state and common law claims pursuant to 28 U.S.C. §§1338 and 1367.

4. This Court has personal jurisdiction over Defendant Millennial Loteria, LLC because is incorporated in California and its principal place of business is in the city of Los Angeles, California.

//

//

5.  This Court has personal jurisdiction over Defendant Mike Alfaro Migoya because Defendant resides in the city of Los Angeles, California.

6.  Furthermore, Defendants have distributed, offered for sale and/or sold infringing merchandise within this State sufficient to permit the exercise of personal jurisdiction.

7.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c).

### THE PARTIES

8.  Plaintiff MARTHA MARIA SANCHEZ QUIROZ is an individual citizen of Mexico with her residence and principal place of business at Queretaro, Mexico.

9.  Plaintiff DON CLEMENTE, INC. is a U.S. Corporation, with its principal place of business located in Austin Texas.

10. PASATIEMPOS GALLO, S.A. DE C.V. is a Corporation located in Queretaro, Mexico.

11. Plaintiffs are informed and believe, and thereon allege, that Defendant MILLENNIAL LOTERIA, LLC is a corporation organized and existing under the laws of the state of California with its principal place of business at 1426 Pearl Street, Los Angeles, CA 90405.

12. On information and belief, and according to the records of the U.S. Patent & Trademark Office, Defendant Mike Alfaro Migoya is a U.S. citizen residing in California at 2778 Sawtelle, Los Angeles, CA 90064-3737.

### FACTS COMMON TO ALL THE CLAIMS FOR RELIEF

13. LOTERIA is a traditional board game of chance that uses a deck of cards with images. Each card has a specific image, number and name. This game became popular in the Mexican culture and then expanded in the rest of the world where is well-known and played not only within the Mexican communities but also in the other communities as well.

14. The origin of the game can be traced back in history, but it was Don Clemente, Inc., here as Plaintiff, that began publishing the game in 1887, creating iconic images that become famous and unique in Mexico first and then in the United States of America

and the rest of the world. Plaintiffs are the original creators, manufacturers of the famous Mexican bingo card games, engaged in, among other things, the creation and licensing of the exceedingly popular LOTERIA bingo cards and board game.  Please see attached as **<u>EXHIBIT B</u>**.  Plaintiffs' business encompasses the production, sale, and licensing of their famous LOTERIA brand board games and bingo cards, as well as footwear, clothing, apparel, kitchenware and other products, all of which prominently display and/or are offered in connection with one or more of Plaintiffs' famous and internationally-recognized, federally-registered trademarks and trade dresses. Plaintiffs Martha Maria Sanchez Quiroz, Don Clemente, Inc. and Pasatiempos Gallo, SA de CV are the rightful owners of the intellectual property rights to the LOTERIA, including all the trademark and trade dress registration certificates. Throughout the years the consumers started to identify the game itself with the Plaintiffs' images and products.

15. Among the bingo cards identified by Plaintiffs' various registered trademarks and trade dresses are the following: (1) US Registration No. 2,868,962; (2) US Registration No. 2,980,462; (3) US Registration No. 2,839,906; (4) US Registration No. 2,959,058; (5) US Registration No. 2,866,355; (6) US Registration No. 2,868,964; (7) US Registration No. 2,975,221; (8) US Registration No. 2,866,357; (9) US Registration No. 3,016,707; (10) US Registration No. 2,839,898; (11) US Registration No. 2,969,255; (12) US Registration No. 2,839,905; (13) US Registration No. 2,871,233; (14) US Registration No. 3,208,050; (15) US Registration No. 2,980,465; (16) US Registration No. 2,890,938; (17) US Registration No. 2,871,200; (18) US Registration No. 2,862,284; (19) US Registration No. 2,868,965; (20) US Registration No. 2,876,658; (21) US Registration No. 2,839,899; (22) US Registration No. 2,868,880; (23) US Registration No. 2,871,195; (24) US Registration No. 2,890,939; (25) US Registration No. 2,975,222; (26) US Registration No. 2,873,957, to name a few.

16. Plaintiffs' LOTERIA-branded products and services have achieved great success. Since their inception in 1887, Plaintiffs' unique images in the bingo cards, and board games have grown to be the world's largest and most successful Mexican bingo card

game with millions of games sold worldwide.  Thus, the consuming public has come to identify Plaintiffs as the source of the bingo card game and apparel products sold under the LOTERIA Marks.

## DEFENDANTS' UNLAWFUL ACTIVITIES

17.On information and belief, Defendants are marketing, offering for sale, selling and distributing bingo cards and board games identified as "MILLENNIAL LOTERIA" (the "Offending Loteria") using an identical or almost identical reproduction of the LOTERIA Marks, as displayed in **EXHIBIT C**.

18.On information and belief, Defendants were familiar with the LOTERIA Marks when they commenced offering for sale, selling and/or distributing the Offending Loteria.

19.On information and belief, Defendants intentionally identified the Offending Loteria to mislead and deceive consumers into believing that such products were manufactured, authorized, sponsored, approved, or licensed by Plaintiffs.

20.The Offending Loteria distributed, offered for sale, and/or sold by Defendants is not manufactured by Plaintiffs, nor are Defendants licensed, authorized, sponsored, endorsed, or approved by Plaintiffs to manufacture, distribute, offer for sale and/or sell board games and bingo cards using any of the LOTERIA Marks.

21.Defendants tried to create a licensed version of the game in December 2017 but then decided to proceed without a proper license from the Plaintiffs.

22.The LOTERIA Marks have been used extensively and continuously by the Plaintiffs, and had become famous, long before Defendants began their unauthorized use of the LOTERIA Marks in connection with efforts to promote and sell the Offending Loteria.

23.The Offending Loteria sold by Defendants competes with goods sold by Plaintiffs, and is sold through overlapping channels of trade. For example, the Offending Loteria produced by Defendants is offered for sale and sold in online retail

outlets where Plaintiffs board games and bingo card games are sold, including on Amazon.com.

24.Defendants' use of reproductions of the LOTERIA Marks is likely to deceive, confuse, and mislead purchasers and prospective purchasers into believing that the Offending Loteria sold by the Defendants is manufactured by, authorized by, sponsored by, approved by, licensed by, or in some manner associated with Plaintiffs, which it is not. In fact, Plaintiffs have discovered evidence of actual confusion between the bingo cards sold and offered for sale by Plaintiffs and those sold and offered for sale by Defendants.  On or about December 5, 2018, the hostess of GoodDayLA on Fox channel 11 while interviewing the Defendant Mike Alfaro indicated that her favorite bingo card image was LA CHALUPA.  There is no such image that belongs to the Defendants but there is such bingo card image that belongs to Plaintiffs Loteria bingo cards.   Another instance of consumer confusion is posted on the Defendants' Instagram Account where there are three individuals wearing t-shirts displaying the LOTERIA Marks and one of them holding a bingo card from the Offending Loteria.  The likelihood of confusion, mistake and deception engendered by Defendants' misappropriation of the LOTERIA Marks is causing irreparable harm to the goodwill symbolized by the LOTERIA Marks and the reputation for quality that they embody. Please see attached as **EXHIBIT D**.

25.Defendants' activities are likely to cause confusion because, inter alia, prospective purchasers, and others viewing the Offending Loteria at the point of sale are likely – due to Defendants' use of the LOTERIA Marks – to mistakenly attribute the product to Plaintiffs.  This is particularly damaging with respect to those people who perceive a defect or lack of quality in Defendants' products.   By causing such a likelihood of confusion, mistake, and deception, Defendants are inflicting irreparable harm to the goodwill symbolized by the LOTERIA Marks and the reputation for quality that they embody.

//

//

26. On Information and belief, Defendants knowingly, willfully, intentionally, and maliciously adopted and used confusingly similar reproductions of the LOTERIA Marks.

## FIRST CLAIM FOR RELIEF
### (Federal Trademark Infringement)

27. Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1 through 26.

28. Defendants' use of confusingly similar imitations of the LOTERIA Marks causes confusion, deception, and mistake by creating the false and misleading impression that Defendants' goods are manufactured or distributed by Plaintiffs, or associated or connected with Plaintiffs, or have the sponsorship, endorsement, or approval of Plaintiffs. As shown in **EXHIBIT C**, Defendants produced, and continues to produce lacking a restraining order from this Court, board game cards representing at least one identical image of the Plaintiffs registered Trademarks.

29. Defendants have used at least one mark confusingly similar to one or more of Plaintiffs' federally registered marks in violation of 15 U.S.C. §1114, and Defendants' activities have caused and, unless enjoined by this Court, will continue to cause likelihood of confusion and deception of members of the trade and public and, additionally, injury to Plaintiffs' goodwill and reputation as symbolized by the federally registered LOTERIA Marks, for which Plaintiffs have no adequate remedy at law.

30. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiffs federally registered LOTERIA Marks to Plaintiffs great and irreparable injury. Defendants initially attempted to obtain a license to produce its own card game, then proceeded without it. Defendants created a version of the card game with almost all the images identical to the ones protected by trademark registration. After several requests to cease and desist the unauthorized use of the LOTERIA Marks by Plaintiffs alleging trademark infringement, Defendants created a second version of the images with further edits arguing that they were creating

a parody version of the cards. However, even with further edits, the majority of the cards show images that are identical or very close to the Plaintiffs'.

31. Upon information and belief, by their acts, Defendants have made and will make substantial profits and gains to which they are not in law or in equity entitled. After listing the game with the infringing images, Defendants received at least ten thousand (10,000) orders that resulted in almost two hundred thousand dollars in revenue on the launch day.

32. Consumers are misled about the origin of the two products and they often confuse the Defendants' product with the LOTERIA Marks. The Loteria game targets the general population in the vast majority. This target is unlikely to control the origin of the product since the purpose is to have fun, hence the Defendants' conduct can be highly dangerous in creating actual misconception as in fact it did. There's no doubt that a consumer quickly looking at the images would associate them with the LOTERIA Marks.

33. Defendants have caused and are likely to continue causing substantial injury to the public and to Plaintiffs, and Plaintiffs are entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs and reasonable attorneys' fees under 15 U.S.C. §§1114, 1116 and 1117.

**SECOND CLAIM FOR RELIEF**

**(Federal Unfair Competition)**

34. Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1 through 26.

35. Defendants' use of confusingly similar imitations of the LOTERIA Marks has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' goods are manufactured or distributed by Plaintiffs, or are affiliated, connected, or associated with Plaintiffs or have the sponsorship, endorsement, or approval of Plaintiffs.

//

36. Defendants have made false representations, false descriptions, and false designations of origin of their goods in violation of 15 U.S.C. §1125(a), and Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Plaintiffs' goodwill and reputation as symbolized by the LOTERIA Marks, for which Plaintiffs have no adequate remedy at law.

37. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the LOTERIA Marks to the great and irreparable injury of Plaintiffs.

38. The Defendants have been aware of the confusion created in the customers because in more than one occasion those expressed appreciation for the LOTERIA marks in Defendants' presence. Defendants have done nothing to avoid that the customers fell into this confusion nor attempted to clarify the statements made by the consumers. Indeed, during the mentioned interview with the hostess of GoodDayLA, the Defendant Mr. Alvaro was talking about his products and the hostess answered referring to the LOTERIA marks (i.e. LA CHALUPA), showing actual and complete confusion between the source of the two products. Mr. Alvaro remained silent in that occasion even if there was a clear error made by the hostess showing confusion between the origin of the two products originating from two different companies. This episode alone was enough to put the Defendant on notice of the actual confusion between the customers. The failure to take any steps that could have clarified the mistake and explained that Defendant was in any way related to the LOTERIA marks is enough to show that Defendant acted with the purpose of taking advantage of the goodwill and the popularity of the LOTERIA marks. It was not until after the fact that Plaintiffs brought it up to Defendants' counsel attention this instance of confusion that the link to the interview was edited to include a caption reading "parody." Thus, the Defendants acted with malice and intent, purposefully availing themselves of a product infringing the LOTERIA Marks.

39. Upon information and belief, by their acts, Defendants have made and will make substantial profits and gains to which they are not in law or in equity entitled.

40. Defendants' conduct has caused, and is likely to continue causing, substantial injury to the public and to Plaintiffs. Plaintiffs are entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs and reasonable attorneys' fees pursuant to 15 U.S.C. §1125,1116 and 1117.

## THIRD CLAIM FOR RELIEF
### (Federal Trademark Dilution)

41. Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1 through 26.

42. Plaintiffs have extensively and continuously promoted and used the registered LOTERIA Marks in Mexico, the United States of America and throughout the world. The LOTERIA Marks thereby had become a famous and well-known symbol of Plaintiffs' goods well before Defendants offered for sale the board game and bingo card game complained of in this Complaint.

43. Defendants are making commercial use in commerce of at least one mark that dilutes and is likely to dilute the distinctiveness of the LOTERIA Marks by eroding the public's exclusive identification of these famous marks with Plaintiffs, tarnishing and degrading the positive associations and prestigious connotations of the marks, and otherwise lessening the capacity of the marks to identify and distinguish goods and services.

44. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the LOTERIA Marks or to cause dilution of the LOTERIA Marks, to the great and irreparable injury of Plaintiffs.

45. Upon information and belief, by their acts, Defendants have made and will make substantial profits and gains to which they are not in law or in equity entitled.

46. Defendants have caused and will continue to cause irreparable injury to Plaintiffs' goodwill and business reputation, and dilution of the distinctiveness and

value of Plaintiffs' famous and distinctive LOTERIA Marks in violation of 15 U.S.C. §1125(c). Plaintiffs therefore are entitled to injunctive relief and to Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§1125(c), 1116 and 1117.

## FOURTH CLAIM FOR RELIEF

### (State Trademark Dilution and Injury to Business Reputation)

47. Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1 through 26.

48. Plaintiffs have extensively and continuously promoted and used the federally registered LOTERIA Marks both in the United States and throughout the world, and the LOTERIA Marks have become a distinctive, famous, well-known symbol of Plaintiffs' goods and services.

49. Defendants' unauthorized use of the federally registered LOTERIA Marks dilutes and is likely to dilute the distinctiveness of Plaintiffs' LOTERIA Marks by eroding to the public's exclusive identification of these famous and well-known marks with Plaintiffs, tarnishing and degrading the positive associations and prestigious connotations of the LOTERIA Marks.

50. Defendants are causing and will continue to cause irreparable injury to Plaintiffs' goodwill and business reputation, and dilution of the distinctiveness and value of Plaintiffs' famous and distinctive LOTERIA Marks in violation of the California law. Plaintiffs therefore are entitled to injunctive relief, damages and costs, as well as, if appropriate, enhanced damages and reasonable attorneys' fees.

## FIFTH CLAIM FOR RELIEF

### (Common Law Trademark Infringement and Unfair Competition)

51. Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1 through 26.

52. Defendants' acts constitute to create a likelihood of confusion to the irreparable injury of Plaintiffs unless restrained by this Court. Plaintiffs have no adequate remedy at law for this injury.

53. On information and belief, Defendants acted with full knowledge of Plaintiffs' use of, and statutory and common law rights to, the LOTERIA Marks and without regard to the likelihood of confusion of the public created by Defendants' activities.

54. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the LOTERIA Marks to the great and irreparable injury of Plaintiffs.

55. Upon information and belief, by their acts, Defendants have made and will make substantial profits and gains to which they are not in law or in equity entitled.

56. As a result of Defendants' acts, Plaintiffs have been damaged in an amount not yet determined or ascertainable. At a minimum, however, Plaintiffs are entitled to injunctive relief, to an accounting of Defendants' profits, to damages, and to costs. In light of the deliberately fraudulent and malicious continuous use of confusingly similar imitations of the LOTERIA Marks, and the need to deter Defendants from similar conduct, Plaintiffs additionally are entitled to punitive damages.

## SIXTH CLAIM FOR RELIEF
### (Tortious Interference with Business)

57. Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1 through 26.

58. The Plaintiffs are in business relationship with several licensees and have contractual relationship with all of them. The Defendants knew about the relationship and the contracts between Plaintiffs and licensees because of the venues and points of sale where the Plaintiffs' products are sold and offered for sale.

59. The Defendants purposely contacted licensees to interfere in its relationship with the Plaintiffs and obtain a license infringing the LOTERIA Marks. The only reason for

Defendants to contact them was to unfairly compete with Plaintiffs and in contacting them Defendants had no justifications whatsoever.

60. The potential harm that from such contact could arise depended on the answer from licensees that put Plaintiffs on notice rather than breaching their contract.

61. Defendants acted in malice in trying to induce licensees, among them BioWorld, to break the relationship and the contract with Plaintiffs.

## SEVENTH CLAIM FOR RELIEF

### (Preliminary and Permanent Injunction Against Defendants)

62. Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1 through 26.

63. Beginning on 2017, Defendants, and each of them, wrongfully and unlawfully created, produced, and sold bingo cards representing images that infringe the LOTERIA marks, create confusion between the customers, dilute the Plaintiffs' trademarks causing damage to Plaintiffs' sales.

64. Defendants' wrongful conduct, unless and until enjoined and restrained by order of this court, will cause great and irreparable injury to plaintiff as the confusion between consumer will spread and the more the Defendants' conduct will be tolerated the more the consumers will not be able to distinguish between the LOTERIA Marks and the infringing cards. The present actual confusion is *per se* an irreparable harm because it will not be possible to cancel from the consumers' mind the association of the two products even if they are not related. A lot of consumers already believe that Defendants' products belong to Plaintiffs' card game and this is already a harm that will not be compensated by money damages alone. Each day that the Defendants conduct continues the harm is growing and therefore the harm will be irreparable if the Court will not grant a preliminary injunction to maintain the status quo and avoid that Plaintiffs suffer further damages.

65. Plaintiffs have no adequate remedy at law for the injuries suffered and for the loss of profit due to the Trademark infringement and the consumers confusion. A

monetary award alone would not provide an adequate remedy as any judgment that This Court will grant will be a remedy for the future and the Plaintiff will need to put more efforts only to realign the consumers perception to the actual truth about the origin of the card game anyway. The uniqueness of the cards and the strength of the brand are at risk, only an adequate and fast injunction can avoid a complete loss.

### PRAYER FOR JUDGMENT AND RELIEF

WHEREFORE, the Plaintiffs pray that:

1. Defendants and all of their agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendants, or in concert or participation with Defendants, and each of them, be enjoined preliminarily and permanently, from: (a). Using any trademark, service mark, name, logo, design or source designation if any kind on or in connection with Defendants' goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to, or in any way similar to the trademarks or trade dresses of Plaintiffs; (b). Using a trademark, trade dress, service mark, name, logo, design or source designation of any kind on or in connection with Defendants' goods or services that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Plaintiffs, or are sponsored or authorized by Plaintiffs or are in any way connected or related to Plaintiffs; (c). Using any trademark, trade dress, service mark, name, logo, design or source designation of any kind on or in connection with Defendants' goods or services that dilutes or is likely to dilute the distinctiveness of the trademarks, trade dress, service marks, names, or logos of Plaintiffs; and (d). passing off, laming off, or assisting in passing off or palming off Defendants' goods or services as those of Plaintiffs, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint;

2. Defendants be ordered to recall all products bearing the LOTERIA Marks or any other confusingly similar variation thereof, which have been shipped by Defendants or

under their authority, to any customer, including, but not limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to each customer a copy of this Court's order as it relates to said injunctive relief against Defendants;

3. Defendants be ordered to deliver up for impoundment and for destruction all board games, cards, bingo cards, bags, boxes, labels, tags, signs, packages, receptables, advertising, sample books, promotional material, stationery or other materials in the possession, custody, or under control of Defendants that are found to adopt, to infringe, or to dilute any of the LOTERIA Marks or that otherwise unfairly compete with Plaintiffs and their products and services;

4. Defendants be compelled to account to Plaintiffs for any and all profits derived by Defendants from the unauthorized use of the LOTERIA Marks including the sale or distribution of infringing goods as described in this Complaint;

5. Plaintiffs be awarded all damages caused by the acts forming the basis of this Complaint;

6. Based on Defendants' knowing and intentional use of confusingly similar imitations of the LOTERIA Marks, the damages award be trebled and the award of Defendants' profits be enhanced as provided for by 15 U.S.C. §1117(a);

7. Defendants be required to pay to Plaintiffs the costs of this action and its reasonable attorneys' fees pursuant to 15 U.S.C. §1117(a) and the state statutes cited in this Complaint;

8. Based on Defendants' willful and deliberate infringement and dilution of the LOTERIA Marks, and to deter such conduct in the future, Plaintiffs be awarded punitive damages; and

9. Plaintiffs have such other and further relief as the Court may deem just.

Date: December 18, 2019                    **NOLI IP SOLUTIONS P.C.**

By:  */S/Mariana Paula Noli*
Mariana Paula Noli, Esq.
CA State Bar 247369
Attorney for Plaintiffs